**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0929-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DONG B. LIN, a/k/a DONG
BIAO LIN,

    Defendant-Appellant.

_____

Submitted December 8, 2021 – Decided December 28, 2021

Before Judges Hoffman and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 10-10-1964.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Mary R. Juliano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dong B. Lin appeals from the March 9, 2020 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

## I.

We glean the following facts from the record. On June 16, 2010, defendant[1] and his co-defendant, Zeng Liang Chen, broke into the home of a former employer in Freehold. The men were armed with a knife and brass knuckles and intended to commit theft. Upon entering the home, they tied up the male victim with telephone wire. Defendant proceeded to search the home for valuables and subsequently found a female victim upstairs in bed. Defendant then stabbed the female victim repeatedly through her bedding; upon hearing a male victim yelling downstairs, defendant returned and stabbed him until his knife broke. Defendant then found another knife in the home and used it to continue the attack. Both victims died from multiple stab wounds. Approximately an hour later, the police arrested defendant and his co-defendant walking nearby.

---

[1] Defendant was born in China and does not speak English. Defendant used interpreters throughout his criminal proceedings.

A-0929-20

On October 18, 2010, a Monmouth County grand jury returned an indictment, charging defendant and his co-defendant with the following offenses: conspiracy to commit armed burglary, second degree, N.J.S.A. 20:5-2 and 20:18-2 (count one); two counts of murder, first degree, N.J.S.A. 20:11-3a(2) (counts two and three); two counts of felony murder, first degree, N.J.S.A. 2C:11-3a(3) (counts four and five); armed burglary, second degree, N.J.S.A. 20:18-2 (count six); armed robbery, first degree, N.J.S.A. 20:15-1 (count seven); and possession of a knife for an unlawful purpose, third degree, N.J.S.A. 2C:39-4d (count eight). In addition, the grand jury returned a notice of aggravating factors against defendant, thus exposing him to life sentences without parole for both murders.

In January 2013, defendant moved to suppress his statement made to the police. The trial court denied defendant's motion in May 2013, following a Miranda[2] hearing. In January 2014, defendant pled guilty to counts two, three, four and five in exchange for the State's agreement to dismiss the remaining counts and to recommend a life sentence for counts two and three subject to the

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0929-20

No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[3] At the outset of defendant's plea hearing, the prosecutor placed the material terms of the plea agreement on the record, including defendant's sentence exposure under the agreement:

> [T]he State will move to recommend, at the time of sentence, that Counts 1, 6, 7, and 8 are dismissed. And the State will recommend life imprisonment with the possibility of parole for Count 2, with a concurrent 30 years with a 30-year period of parole ineligibility for Count 3.
>
> . . . .
>
> This plea [agreement] is conditioned upon truthful testimony against the co-defendant, meaning that Dong Biao Lin realizes that if Zeng Chen decides to go to trial, that Dong will testify against him and tell the truth as to what happened.
>
> . . . .
>
> As part of this plea [agreement], the defendant realizes that Counts 2 and 3 will be subject to the No Early Release Act. So on the count where there is life with parole, Dong Lin is looking at a minimum of 67 years and six months before he would even be considered for the possibility of parole. And then he also has the second count where there is 30 years with a 30-year period of parole ineligibility.

---

[3] Under the terms of the plea agreement, count four merged into count two and count five merged into count three.

After the prosecutor finished placing the plea agreement on the record, defendant's counsel addressed the court:

> Your Honor, I agree with Mr. LeMieux as to the substance of the plea agreement. I've gone over the questions and the answers on the plea forms with Mr. Lin, and he has indicated that he understands the questions and is entering this plea knowingly and voluntarily.
>
> THE COURT: Miss Noto, you used the services of the interpreter also?
>
> MS. NOTO: Yes, your Honor, I did.

Defendant's counsel further noted "that the defense reserves the right to argue for less than the sentence that the prosecutor is recommending."

By way of factual basis, defendant recounted that he and his codefendant broke into the victims' home to commit theft, and that they tied up the male victim with telephone wire. Defendant testified he searched the home for valuables, found the female victims upstairs in bed and stabbed her through the bedding; when the male victim began struggling and yelling after hearing the cries of the female victim, defendant stabbed him as well. Defendant stated he stabbed the male victim until his knife broke. He then found another knife in the house and continued the assault.

5

Both defendant and his counsel agreed that they reviewed the plea form together, with the aid of an interpreter. Moreover, defendant testified that he understood the questions on the form and answered them truthfully. Defendant also confirmed that he was pleading guilty "freely and voluntarily."

Relevant to defendant's PCR claim, the plea judge and defendant engaged in the following colloquy:

> Q: Question 13 essentially lists the prosecutor's recommended sentence, which Mr. LeMieux went over in detail, but I will go over that with you again, is that the State is recommending life imprisonment with the possibility of parole on Count 2, murder in the first degree, which would run concurrently with a 30-year sentence with a 30-year period of parole ineligibility under Count 3, murder in the first degree. Do you understand that?
>
> A: Yes.
>
>      . . . .
>
> Q: Question 7 talks about the mandatory periods of parole ineligibility. And it talks about the facts that the minimum period of parole ineligibility would be a 30-year period and the maximum on a life sentence is 67 and a half years,[4] which would be less any time that

---

[4] The correct period of parole ineligibility for defendant should have been stated as 63.75 years, not 67.5 years. See State v. Manning, 240 N.J. 308, 324 (2020). The incorrect figure was not cited by the judge at sentencing nor was it included in defendant's judgment of conviction; thus, we conclude this misstatement was harmless error.

you've already served at the time of your sentencing. Do you understand that?

A: Yes.

Q: Now, in Question 21 — we turn to the second-to-last page — it indicates — the State indicates that there have been no other promises between the defendant and the State, and that your attorney. Miss Noto, has reserved the right to argue for less than a life sentence at the time of sentencing. Do you understand that?

A: Yes

A: Now, that decision would be made by me after I listened to the arguments of both attorneys, I listen to what you have to say, I listen to what the victims have to say or the victims' family, and also read what's called your presentence investigation report. Do you understand that?

A: Yes.

Defendant subsequently testified at the trial of his co-defendant, who was convicted as charged. At defendant's sentencing hearing in May 2015, defense counsel urged the court to find mitigating factors seven, nine, and twelve, N.J.S.A. 2C:44-1(b)(7), (9) and (12), emphasizing that defendant had no prior criminal record, that he took rehabilitative measures in jail, and was remorseful and cooperated with the State by pleading guilty and testifying against his co-defendant.

A-0929-20

Despite the defense's arguments in mitigation, the court found aggravating factors preponderated and imposed the sentence the parties negotiated: life imprisonment with an eighty-five percent parole bar on count two and a concurrent thirty-year term with no parole on count three. The court provided a detailed description of the murders, noting their brutality, the victims' injuries, and the evidence of pain and anguish the victims experienced during their slayings.

Defendant appealed, arguing that his statement made to police should have been suppressed and that his sentence was excessive. We rejected both arguments and affirmed. State v. Lin, No. A-4559-14 (App. Div. Apr. 12, 2018) (slip op. at 2). On October 24, 2018, our Supreme Court denied certification. State v. Lin, 235 N.J. 456 (2018).

On December 4, 2018, defendant filed the PCR petition under review, alleging:

> a) Ineffective assistance of trial counsel for misleading defendant to believe he will ONLY receive 30 years with 30[-]yr parole disqualify.
>
> b) Defendant did NOT knowingly, voluntarily and intelligently accept[] his plea to life imprisonment with 85% parole disqualifier. Defendant understood he would receive 30 yrs with [a] 30[-]year parole disqualifier for all counts to be served concurrently.

8

Defendant's PCR counsel argued that defendant's plea counsel promised that he would only receive a thirty-year sentence, rather than life, and that this amounted to ineffective assistance of counsel. Thus, defendant maintained that he deserved an evidentiary hearing on this issue. Furthermore, defendant filed a pro se brief, seeking to vacate his guilty plea, claiming that his plea counsel misled him "into believing he would receive the lower 30-year sentence, rather than the 75 years with an[] 85% disqualifier."

In March 2020, oral argument was held on defendant's PCR petition. On March 9, 2020, the trial judge denied defendant's motion for PCR in a written opinion. The judge found that defendant failed to present a prima facie case of ineffective assistance of counsel, reasoning that "defendant engaged in colloquy with the [c]ourt indicating that plea counsel explained the consequences of the plea, that he fully understood the plea, and that he was satisfied with plea counsel's representations."

This appeal followed, with defendant presenting these arguments:

POINT I

THE PCR COURT ERRED IN DENYING MR. LIN AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL EXPLAINING WHY SHE FAILED TO EXPLAIN THE TERMS OF

9

THE PLEA OFFER TO MR. LIN, THEREBY MAKING HIS PLEA UNKNOWINGLY GIVEN.

POINT II

THE PCR COURT ERRED IN DENYING MR. LIN AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL EXPLAINING WHY SHE FAILED TO ACCURATELY RELAY THE TERMS OF THE PLEA OFFER TO MR. LIN.

II.

PCR is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49 (1997); State v. Preciose, 129 N.J. 451, 459 (1992). It is the vehicle through which a defendant may, after conviction and sentencing, challenge a judgment of conviction by raising issues that could not have been raised on direct appeal and, therefore, ensures that a defendant was not unjustly convicted. State v. McQuaid, 147 N.J. 464, 482 (1997). Where no evidentiary hearing was conducted in the denial of a PCR petition, we review "the factual inferences drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). Furthermore, we review de novo the trial court's conclusions of law. Ibid.

As a threshold matter, a PCR claim "must be established by a preponderance of the credible evidence." State v. McQuaid, 147 N.J. 464, 483 (1997) (citing Preciose, 129 N.J. at 459). PCR "is cognizable if based upon . . .

10

[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." R. 3:22-2(a).

A defendant is generally entitled to a PCR evidentiary hearing upon showing a prima facie claim of ineffective assistance of counsel. State v. Porter, 216 N.J. 343, 354 (2013). To establish a prima facie claim, the petitioner "must allege specific facts and evidence supporting his allegations." Id. at 355. In other words, "to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The trial court has discretion to dispense with an evidentiary hearing "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, or that the defendant's allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing." State v. Marshall, 148 N.J. 89, 158 (citation omitted) (1997).

In determining whether a defendant has established ineffective assistance of counsel, we evaluate the claim under the two-prong Strickland test, where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,' . . . and if so, (2) whether there exists

11

a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" Strickland v. Washington, 466 U.S. 668, 688 (1984); State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test in New Jersey).

A defendant may satisfy the first prong of the Strickland test "by a showing that counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314). Additionally, when a claim of ineffective assistance of counsel follows a guilty plea, the defendant must prove counsel's deficient representation and "a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." State v. Brewster, 429 N.J. Super. 387, 392 (App. Div. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Notably, an "erroneous sentencing prediction" by defense counsel does not render counsel's performance as "constitutionally defective" under Strickland. State v. DiFrisco, 137 N.J. 434, 457 (1994) (citations omitted).

12

## A.

Defendant first contends that counsel failed to inform him that his plea agreement exposed him to life imprisonment subject to NERA for the first-degree murder charge (count two). Rather, defendant maintains that his prior counsel "misled" him in off-the-record conversations, and that counsel told him he would receive concurrent sentences of thirty years, with a thirty-year parole disqualifier. Defendant argues that this constitutes ineffective assistance of counsel. This argument lacks merit.

As noted, whether defendant has established a case of ineffective assistance of counsel is evaluated under the two-prong Strickland test. Prong one requires that counsel's representation was objectively deficient. Here, the record before us does not support a finding that counsel's representation fell below an objective standard of reasonableness.

Although defendant claims that counsel informed him "off the record" that he would only receive a thirty-year sentence, with a thirty-year parole disqualifier, the plea colloquy shows that defendant understood that the State would be recommending a life sentence with the possibility of parole. Even if counsel told defendant he would receive the lesser thirty-year sentence, such an "erroneous sentencing prediction" does not render counsel's representation as

13

ineffective. See DiFrisco, 137 N.J. at 457 ("[e]rroneous sentencing predictions . . . do not amount to constitutionally-deficient performance under Strickland."). Defendant can hardly argue that he was "misled" by counsel, as the plea colloquy plainly shows that the plea judge made sure that defendant understood the terms of his plea agreement.

As to the second prong of the Strickland test, which requires defendant to show a reasonable probability that, but for counsel's error, defendant would have rejected the plea, the record likewise does not support such a finding. To start, defendant fails to address, let alone establish, this prong in his appellate brief. Because this element is indispensable to an ineffective assistance of counsel claim, defendant's failure to address it is fatal to his claim. See Hill, 474 U.S. at 60 ("Because petitioner . . . failed to allege the kind of "prejudice" necessary to satisfy the second half of the Strickland v. Washington test, the District Court did not err in declining to hold a hearing on petitioner's ineffective assistance of counsel claim.").

B.

Defendant similarly contends that his prior counsel's ineffective assistance rendered his plea as "unknowingly given." Namely, defendant argues that his plea was not given knowingly because he understood he would receive

a thirty-year sentence with a thirty-year parole disqualifier. Additionally, defendant argues that the PCR court failed to consider the language barrier between defendant and the trial judge, or whether there was confusion with the translation. These arguments also lack merit.

There are various procedural requirements that come with the taking of a guilty plea. State ex rel T.M., 166 N.J. 319, 325 (2001). Rule 3:9-2 provides that

> A defendant may plead only guilty or not guilty to an offense. The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as the result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.
>
> [Id. at 326]

Put another way, guilty pleas must (1) have a sufficient factual basis; (2) be offered voluntarily; and (3) be given with an understanding of the nature of the charge and its consequences. Id. at 325. Of relevance here, a court can only accept a guilty plea when it is convinced that the plea was entered "knowingly

15

and voluntarily and with an understanding of the consequences." State v. Warren, 115 N.J. 433, 447 (1989).

The record supports a finding that defendant provided a knowing and voluntary guilty plea. The plea form and the transcript, including statements made by the prosecutor, defense counsel, the judge, and the defendant himself, all indicate that defendant knew that a life sentence was a possible consequence of the plea. In fact, the record shows that defendant understood that the State would be recommending such a sentence. Specifically, the prosecutor clearly stated, in placing the plea agreement on the record, that "on the count where there is life with parole, Dong Lin is looking at a minimum of 67 years and six months before he would even be considered for the possibility of parole." Defendant's claim that he did not understand he could receive a life sentence is directly contradicted by the prosecutor's clear statement.

To the extent defendant argues that a language barrier existed between him and the judge, or that the interpreter did not sufficiently express the terms of the plea, defendant points to no evidence in the record supporting such a claim.

Accordingly, defendant has failed to demonstrate that his plea was given unknowingly and involuntarily. In addition, defendant has failed to set forth a

prima facie case of ineffective assistance of counsel. We conclude the PCR court properly denied defendant's petition for PCR without an evidentiary hearing. The court reasonably exercised its discretion to deny defendant an evidentiary hearing under <u>Rule</u> 3:22-10 because defendant's ineffective assistance claim was resolvable by reference to the plea record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0929-20